## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

**ROBERT TRAVIS**                                                                    **PLAINTIFF**

**vs.**                                          **NO. 1:21-CV-1018-SOH**

**DENNIS BANKS; JOE EUBANKS;**
**LARRY LAND; and RALPH KINNEY**                                  **DEFENDANTS**

#### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Dennis Banks, Joe Eubanks, Larry Land and Ralph Kinney, by their attorneys,

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., submit the following Brief in Support of

their Motion for Summary Judgment:

### I.     INTRODUCTION

Plaintiff Robert Travis commenced this action on April 22, 2021, under the Fair Labor

Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA").[1]   Both causes of

action arise from the same allegation:  Travis alleges that Defendants required him to work off-

the-clock, which resulted in a failure to pay overtime wages in violation of the FLSA and the

AMWA.  Compl. at 6, ¶¶ 47-52.  To establish such a claim, Travis must prove that he performed

compensable work for which he was not paid.  However, it is apparent that Travis was always paid

for his overtime work, and conclusory allegations to the contrary are insufficient to prove

otherwise.  Further, Travis does not sue his employer—North Crossett Utilities—but instead sues

several individuals associated with his employer.  But, these individual Defendants have no place

---

[1] The AMWA imposes the same overtime requirements as the FLSA.  *Helmert v. Butterball, LLC*, 805 F. Supp.2d 655, 663 n. 8 (E.D. Ark. 2011).  And the Arkansas Department of Labor "may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the Arkansas Minimum Wage Act] ... except to the extent a different interpretation is clearly required." 235.01.1 Ark. Code R. § 112.  Travis's cause of action under the AMWA cannot defeat summary judgment for the same reason as his cause of action under the FLSA.

or role in this lawsuit.  Defendants are entitled to judgment as a matter of law and dismissal of this action with prejudice.

## II.   RELEVANT BACKGROUND

In August 2012, Plaintiff began working for North Crossett Utilities.  SUMF ¶ 2.  North Crossett Utilities is an improvement district that operates for the benefit of the people in the improvement district.  SUMF ¶ 3.  Pursuant to statute, three board members provide oversight to the improvement district; these board members are Dennis Banks, Larry Land and Joe Eubanks.  SUMF ¶ 4.  Although the board members provide general oversight to North Crossett Utilities, they do not set an employee's rate of pay, establish job duties, hire or fire employees, or provide oversight to the day-to-day operations of North Crossett Utilities.  SUMF ¶ 5.

Upon employment with North Crossett Utilities, each employee receives the North Crossett Utilities Handbook ("Handbook").  SUMF ¶ 6.  The Handbook explains that an employee may be terminated at anytime by the District Manager.  SUMF ¶ 7.  At the time of Travis's termination, Ralph (Buddy) Kinney was the District Manager; thus, he managed Travis.  SUMF ¶ 9.  Travis was a Superintendent, and in this role, he supervised three crew members.  SUMF ¶ 8.

Relevant to this case, the Handbook also explains that "[h]ours accrued over 40 hours will be compensated at a rate of one and one half times the employee's base hourly rate."  SUMF ¶ 12.  "Each employee is responsible for punching in and out with his or her time card," and "[i]n the event that someone cannot punch the time clock, the District Manager shall be notified and will take the necessary actions required to satisfy the time-keeping."  SUMF ¶ 13.  Beyond the handbook, Kinney and Tina Maxwell—the Office Manager—often had meetings about working overtime. SUMF ¶ 14.

On a typical day, Travis's crew stayed together and fixed gas and water leaks.  SUMF ¶ 15.  Thus, every morning Travis began by clocking in at the North Crossett Utilities facility before

heading out to the field, and he ended the day by clocking out at the facility. SUMF ¶ 16. Travis was trained to clock in and out each day, and it was his habit to do so. SUMF ¶¶ 17-18. Because Travis was the Superintendent, there was no supervisor observing him clock in and out everyday. SUMF ¶ 21. Further, he had sole possession of his time card from Monday to Friday every week. SUMF ¶ 22. And, when reviewing these time cards, Travis was able to correct the times when he failed to clock in or out. SUMF ¶ 23. Finally, as an additional precaution, Travis's check stubs from North Crossett Utilities included a break down of time with overtime hours noted. SUMF ¶ 24.

It is apparent that Travis understood how to report overtime given that he reported overtime more than 50 percent of the time. SUMF ¶ 26. For example, from March 9, 2019, to March 15, 2019, Travis recorded 54:15 hours of work. SUMF ¶ 35. As another example, from November 2, 2019, to November 8, 2019, he recorded 61:15 hours of work. SUMF ¶ 35. This continued into 2020. From September 12, 2020, to September 18, 2020, he listed 67:45 hours. SUMF ¶ 38. These are only limited examples, and Travis in fact reported around 584 hours of overtime in 2019 and 2020. SUMF ¶ 41. In addition, Travis documented 109 overtime hours in 2021 before his employment was terminated. SUMF ¶ 42. It is undisputed that Travis was paid for every hour of overtime that he recorded. SUMF ¶ 27. In addition, Travis worked an additional job during the week at West Crossett Sewer. SUMF ¶ 59.

Despite this already large amount of overtime, Travis now alleges that he worked around 20 hours a week off-the-clock. SUMF ¶ 29. Travis had no documentation or record of these hours; he also never gave specific instances of working off-the-clock. SUMF ¶ 31. Instead, he explained that he simply estimated that he worked about four to five hours every day after work. SUMF ¶ 30. When attempting to reconcile the inconsistency between reporting large amounts of overtime some weeks yet choosing to allegedly work off-the-clock at other times, Travis stated that he

simply made the choice himself whether to record the overtime and did not consult with anyone at North Crossett Utilities.  SUMF ¶ 43.  Further, no one required him to work hours that were not compensated.  SUMF ¶ 44.  In fact, he admitted that he was the only employee at North Crossett Utilities that allegedly worked off-the-clock.  SUMF ¶ 51.

Although Travis states that he chose to work off-the-clock on his own volition, he believes that everyone knew.  SUMF ¶ 50.  However, when pressing into this broad allegation, Travis stated that he told only Maxwell and Kinney.  SUMF ¶¶ 45, 48.  He explained that they knew about his off-the-clock work because "[t]hey just knew."  SUMF ¶ 47.  But, Travis also admitted that he did not tell anyone other than Kinney that he was working off-the-clock.  SUMF ¶ 49.

In March 2021, Travis resigned from employment before Kinney could terminate him due to the fact that he was not a team player.  SUMF ¶ 52.  After Kinney terminated him, Travis met with Eubanks, Land, and Banks—the board members—about his termination.  SUMF ¶ 53.  Travis admits that he did not tell the board members at the meeting about not being paid overtime for working off-the-clock.  SUMF ¶ 56.  He did allege that while at Eubanks's house on a different date, Eubanks mentioned that he knew how much Travis worked for North Crossett Utilities both on and off the clock.  SUMF ¶ 55.

Although Travis did not once request additional overtime for alleged "off-the-clock" work while employed with North Crossett Utilities, on April 22, 2021, he filed suit against Dennis Banks, Joe Eubanks, Larry Land, and Ralph Kinney (not North Crossett Utilities) for alleged violations of the overtime provisions of the FLSA and AMWA due to the fact that he allegedly worked off-the-clock.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  "The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts." *Oliver v. Johanson*, 329 F. Supp. 3d 684, 689 (W.D. Ark. 2018) (citing *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997)).  "Once the moving party has met its burden, the non-moving party must 'come forward with specific facts showing that there is a genuine issue for trial.'" *Vega-Sanchez v. McElroy*, No. 5:16-CV-05037, 2017 WL 3891668, at *2 (W.D. Ark. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  *Torgerson v. City of Rochester* holds that, "[t]he nonmovant must respond by submitting evidentiary materials of specific facts showing the presence of a genuine issue for trial." 643 F.3d 1031 (8th Cir. 20011) (en banc).  "The nonmoving party must do more than raise some metaphysical doubt about the material facts, and cannot rest on mere denials or allegations." *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018) (citing *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)).  The nonmoving party must instead present enough evidence that a jury could reasonably find in his favor.  *Id.*

## IV.    ARGUMENT

### A.    The Individual Board Members and District Manager are Improper Defendants Because They are Not Employers

At the outset, it is worth noting that instead of suing North Crossett Utilities—the employer—Travis chose to sue four individual defendants associated with North Crossett Utilities in certain capacities.  This is an interesting choice given that North Crossett Utilities is a consolidated suburban improvement district.  The statutes allowing for the creation of improvement districts typically include language specifically designating the districts as a corporate body for purposes of conducting business.  For example, Ark. Code Ann. § 14-92-221 states that "[e]ach suburban improvement district shall be a body corporate with power to sue and

to be sued." *See also* Ark. Code Ann. § 14-92-303 ("Any consolidation of improvement districts shall be a body politic as a governmental and political subdivision of the state."). In addition, generally, no member of a board shall be liable for any damages unless it is apparent that the member acted with "corrupt and malicious intent." Ark. Code Ann. § 14-92-207. Further, pursuant to state law, officers of the state are immune from suit except to the extent covered by insurance or for malicious acts. *Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017, 1024 (8th Cir. 2021). Here, there is no evidence of corrupt or malicious intent on the part of any of the Defendants.

Further, it is undisputed that the Defendants are not employers for purposes of the FLSA. Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). AMWA has a similar definition. *See* Ark. Code Ann. § 11-4-203(4)(A). In assessing whether an individual is an employer, courts look to "whether the alleged employer (1) had hiring and firing power, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained the plaintiff's employment records." *Grove v. Meltech, Inc.*, No. 8:20-CV-193, 2021 WL 1516412, at *2 (D. Neb. Apr. 16, 2021). In addition, a court should take into account the "economic reality" presented by the circumstances of the case. *See Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Le v. Regency Corp.*, 957 F. Supp. 2d 1079, 1089 (D. Minn. 2013).

As explained previously, the board members—Eubanks, Banks, and Land—did not set Travis's rate of pay, establish job duties, hire or fire him, or provide oversight to the day-to-day operations of North Crossett Utilities. SUMF ¶ 5. In addition, the board members do not own North Crossett Utilities but—instead—simply serve as board members for the improvement district in accordance with Arkansas law. The board members are not employers. Similarly,

6

although Kinney did exert some control over Travis in his day-to-day actions and had the power to terminate him, the economic reality of Kinney's position simply does not support the notion that Kinney is an employer. Instead, he simply acted within the course of his duties as an employee of North Crossett Utilities—the actual employer. It is undisputed that the Defendants are not employers under FLSA or AMWA and, therefore, are entitled to summary judgment.

**B.    Defendants are Entitled to Summary Judgment on Travis's FLSA and AMWA Claims.**

Under the FLSA, nonexempt employees like Travis generally must be paid no less than the minimum wage for each hour worked, as well as one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 201, *et seq*. In order to prevail on his overtime claim, Travis must prove that (1) he worked above his scheduled hours without compensation and (2) the Defendants "knew or should have known" that he was working overtime. *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009).

**1.    Travis fails to prove that he performed work for which he was not compensated.**

It is well established that an employee has the initial burden of proving that he performed work for which he was not properly compensated. *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 881 (8th Cir. 2011). This burden is easily discharged if the employee can prove this through the employer's time records. *Id.* at 882. However, this burden is more difficult to meet when the employee alleges (as Travis does) that the records are inadequate or inaccurate. *Id.* Thus, an employee can meet this burden only if "he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87 (1946) (superseded by statute on other grounds)). Travis fails

to meet this burden because he has provided no evidence as to the amount and extent of his alleged off-the-clock work.

For example, in *Rapp v. Network of Community Options, Inc.*, the plaintiffs alleged that they worked 98 hours of weekly overtime pay and 28 hours of weekly overtime pay. 3 F.4th 1084, 1086 (8th Cir. 2021). However, the Eighth Circuit affirmed the district court's grant of summary judgment because the plaintiffs provided no evidence of the compensable hours that they worked. *Id.* at 1087. Specifically, although they gave a general estimate of the amount of hours they worked in overtime each week, they failed to identify specific hours or days in the week during which overtime occurred and "failed to provide a meaningful explanation of how [they] arrived" at their overtime estimate. *Id.*

Here, Travis simply alleges that he worked about 20 uncompensated hours each week. SUMF ¶ 29. He further explained that he arrived at this estimate by simply guessing that he worked four to five hours every day after clocking out. SUMF ¶ 30. However, Travis has no documentation of these hours and could not explain specific hours of the week or specific days in certain weeks in which he worked overtime off-the-clock. SUMF ¶ 31. Thus, similar to in *Rapp*, Travis fails to "provide a meaningful explanation" of how he arrived at his off-the-clock estimate. *See* 3 F.4th at 1087.

This deficiency is further exacerbated by the fact that Travis frequently recorded overtime. SUMF ¶ 32. For example, in some weeks, Travis would actually record 20 hours of overtime or more. *See, e.g,.* SUMF ¶ 36. Further, Travis explained that he simply made a choice during a week whether to record overtime and that he did not consult with anyone at North Crossett Utilities when recording overtime. SUMF ¶ 43. As this shows, it is impossible to determine when Travis was working overtime that he decided to record and when Travis was allegedly working off-the-clock, which makes it even more difficult to determine how Travis came up with his 20-hour-per-

week estimate.  Travis has done nothing but put forth "contradictory and bare assertions of his overtime hours worked," especially in light of the clear records of overtime kept by North Crossett Utilities.  *See Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014) ("Holaway provided only vague testimony and failed to reference specific days and hours worked.  This failure includes a failure by Holaway to check his hours worked against any business records kept by Stratasys.").  Travis fails to meet his burden that he performed work for which he was not compensated, and Defendants are entitled to summary judgment on this basis alone.

      2.       **There is no evidence that Defendants knew or should have known that Travis worked off-the-clock.**

Even if Travis can show he worked hours off-the-clock and was not compensated for those hours, there is no evidence to raise a genuine issue as to whether Defendants knew or should have known Travis was allegedly working hours off-the-clock.  When an employee works unauthorized hours in excess of his regular schedule, an employer is required by law to pay those hours only if the employer knows or should have known about the hours.  *See Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 782 (8th Cir. 2009); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975).  Travis is not entitled to payment for the overtime hours he allegedly worked off-the-clock because Defendants neither knew nor had reason to know about any excess hours.

      *a.*       *North Crossett Utilities established a clear procedure pursuant to which an employee could obtain approval for working excess hours.*

An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence.  *Hertz*, 566 F.3d at 781.  It is an employer's duty to exercise its control and see that the work is not performed if it does not want it to be performed.  *See* 29 C.F.R. § 785.13.  "One way an employer can exercise diligence is by establishing a reasonable process for an employee to report uncompensated work time."  *Allen v. City of Chicago*, 865 F.3d 936, 938-39 (7th Cir. 2017).  Because an employee bears some

responsibility for ensuring he reports all hours worked, an employer is not liable for non-payment if it establishes a reasonable process for an employee to report uncompensated work time and the employee fails to follow the established process. *See Hertz*, 566 F.3d at 781-82; *see also White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012). The evidence shows that North Crossett Utilities established clear rules against working overtime without approval and continuing to work after clocking out, and it had the right to require its employees to adhere to those rules. *See Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 559 (E.D. Pa. 2013) (granting summary judgment where employer required approval for overtime work and the plaintiff had not sought approval).

The Employee Handbook in effect during Travis's employment provides that "each employee is responsible for punching in and out with his or her time card," and "[i]n the event that someone cannot punch the time clock, the District Manager shall be notified and will take the necessary actions required to satisfy the time-keeping." SUMF ¶ 13. North Crossett Utilities trained employees to clock in and out each day. SUMF ¶ 17. Further, Travis understood that he could correct times if he failed to clock in, and in fact, he did so from time to time. SUMF ¶ 23. Finally, Travis received detailed pay stubs each payday documenting hours worked, including overtime. SUMF ¶ 24. It is clear that North Crossett Utilities provided a reasonable process for employees to document and report hours worked, including overtime.

Given this reasonable process, North Crossett Utilities was entitled to rely on Travis to follow its policies regarding off-the-clock work and to assume that if Travis was clocking out, it was because he had completed his job duties. *See Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 683-84 (8th Cir. 1996) (finding that employer was entitled to rely on employee to follow the clear terms of an agreement about the amount of time employee was to spend on job duties).

10

> b.      *The evidence shows that Defendants had no knowledge of any excess hours worked off-the-clock.*

Given that North Crossett Utilities had a clear process for documenting overtime and always paid Travis for his overtime (making it difficult to show constructive knowledge), Travis instead alleges that the Defendants had actual knowledge of his off-the-clock work. *See Hertz*, 566 F.3d at 781-82. Because Travis has sued multiple Defendants in their individual capacities, he must prove that each Defendant had knowledge of his alleged off-the-clock work. He fails to do so.

First, Travis never alleges that he told Banks or Land that he was working off-the-clock. Further, given that these individuals were not involved in the day-to-day activities of North Crossett Utilities, there is no evidence that Banks or Land had knowledge that Travis was allegedly working off-the-clock. *See Hertz v. Woodbury Cnty.,* 566 F.3d 775, 782 (8th Cir. 2009) (explaining that employer does not have to weed through non-payroll records or conduct other oversight, and therefore, constructive knowledge is not imputed for such a failure). Thus, both Banks and Land are entitled to summary judgment on this basis.

As to Eubanks, Travis makes the self-serving allegation that Eubanks discussed Travis's hard work ethic—both on-the-clock and off-the-clock—after Travis was terminated. First, actual knowledge attaches if the employer knows that "the employee is continuing to work" before and after scheduled hours. *Hertz*, 566 F.3d at 782. But, here, Eubanks's alleged statement did not come until *after* Travis's employment had been terminated. Second, there is no evidence to suggest that Eubanks had a means for knowing that Travis had allegedly worked off-of-the clock, and there is no evidence that Eubanks actively discouraged reporting overtime or that he was involved in any manner with Travis's pay. Thus, it is undisputed that Eubanks had no involvement in the day-to-day reporting (or lack thereof) of overtime while Travis was employed with North Crossett Utilities.

Finally, Travis alleges that Kinney knew he was working off the clock because Kinney saw him in the field and Travis told him. However, when further pressed on this matter, Travis explained that Kinney "just knew" he was working overtime. SUMF ¶ 47. Other than this self-serving allegation, Travis points to no evidence to prove that anyone at North Crossett Utilities was aware that he was working overtime. Thus, Defendants are entitled to summary judgment.

**C.     Even if This Court Refuses to Grant Summary Judgment, It Is Undisputed That Any Alleged Violation Was Not Willful and That Defendants Acted in Good Faith**

In general, the FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). However, the statute of limitations may be expanded if the alleged violation was willful. *Browne v. P.A.M. Transp., Inc.*, 434 F. Supp. 3d 712, 725 (W.D. Ark. 2020). "Negligence or good-faith error by the employer is insufficient to establish willfulness." *Id.* Defendants never told Travis that he could not report overtime or took any actions to make Travis believe he could not report overtime. This is heavily supported by North Crossett Utilities time cards and pay stubs, which show that Travis in fact frequently reported overtime. Finally, Travis admitted that he voluntarily made his own choice regarding when to record overtime. SUMF ¶ 43. Defendants did not act willful with respect to any alleged FLSA violation.

In addition, Travis seeks liquidated damages, but such damages should not be awarded because Defendants have acted in good faith and in an objectively reasonable manner. *Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 917 (8th Cir. 1991). It is undisputed that North Crossett Utilities set in place specific guidelines for overtime and that it paid Travis for all recorded overtime. Thus, even if Travis did choose on his own volition to work off-the-clock, Defendants acted in good faith and should not be held liable for liquidated damages.

## V.    CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment.

This 10th day of March, 2022.

Respectfully submitted,

**DENNIS BANKS; JOE EUBANKS;
LARRY LAND; AND RALPH KINNEY**

Byron Freeland (Ark. Bar No. 72039)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 W. Capitol Ave., Suite 1800
Little Rock, Arkansas 72201
Phone:  (501) 688-8800
bfreeland@mwlaw.com

13