IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROBERT TRAVIS                                                                                              PLAINTIFF

v.                                               Case No. 1:21-cv-1018

DENNIS BANKS; JOE
EUBANKS; LARRY LAND;
and RALPH KINNEY                                                                                        DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 14). Plaintiff responded. (ECF No. 19). Defendants replied. (ECF No. 23). The matter is ripe for consideration. For the following reasons, the motion will be granted.

### I. BACKGROUND

This is a wage and hour case. Plaintiff is a former employee of North Crossett Utilities, an improvement district in Ashley County, Arkansas. Plaintiff began working for North Crossett Utilities in 2012. By the end of his employment in March 2021, he was a superintendent who led a three-man crew that fixed water, gas, and sewer leaks throughout the district. Defendants Banks, Land, and Eubanks are board members for North Crossett Utilities who provide oversight to the improvement district. Defendant Kinney is the district manager for North Crossett Utilities and was Plaintiff's supervisor.

Upon beginning his employment, Plaintiff received the North Crossett Utilities Handbook which, among other things, established that his employment could be terminated at any time, for any reason, by the North Crossett Utilities district manager or "the Commission." (ECF No. 14-

2, pp. 3, 34).[1]  The handbook also set out that any hours worked by an employee over forty hours in a workweek would be paid at a rate of one-and-a-half times the employee's base hourly rate. The handbook required each employee to punch in and out daily with his or her timecard.  If, for some reason, the employee could not punch the time clock, the handbook instructed the employee to notify the district manager, who would take necessary action regarding timekeeping.

Plaintiff was trained to clock in at the North Crossett Utilities facility at the beginning of each day and to return to clock out at the end of the day.  Because he was a superintendent, no one would observe him clock in or out.  During the workweek, Plaintiff kept his timecard, which detailed the hours he logged.  Plaintiff would sometimes retroactively correct his logged times if he failed to clock in or out.

Plaintiff sometimes worked before clocking in or after clocking out and recorded those hours on his timecard.  It is undisputed that he recorded overtime hours for at least half of his workweeks while employed.  However, the primary dispute in this case involves numerous overtime hours Plaintiff claims to have worked but did not log or report, and thus, was not paid for.  Plaintiff's only record of these overtime hours was kept on a piece of notebook paper that he stored in his personal vehicle, but this paper was apparently lost at some point, so there is now no record of the alleged unreported overtime hours.  (ECF No. 14-1, p. 37).  Plaintiff estimates that he worked an average of twenty hours of overtime per week that went unreported and unpaid.

Defendants Eubanks, Banks, and Land did not have offices at the North Crossett Utilities facility but once a week, on average, they could come to the facility to check on things and to sign Plaintiff's paychecks.  While there, they would sometimes exchange pleasantries with Plaintiff, but they never discussed his job responsibilities.  Once or twice a year, they would go into the field

---

[1] Unless otherwise noted, all citations to specific pages in record filings are to the pagination generated at the top of the page by the CM/ECF system.

and observe Plaintiff and his crew working. Multiple times per week, Defendant Kinney would go into the field and observe Plaintiff working, sometimes after normal work hours had ended.

Plaintiff occasionally met with Defendant Kinney and Tina Maxwell, the office manager for North Crossett Utilities, about overtime. Defendant Kinney and Maxwell discouraged employees from working "a lot" of overtime. (ECF No. 19-1, p. 27).

Plaintiff's employment with North Crossett Utilities ended sometime in March 2021, but the record is unclear how. Plaintiff testified in his deposition that Defendant Kinney fired him for not being a "team player." (ECF No. 19-1, p. 3). Defendant Kinney stated during discovery that Plaintiff resigned after learning he was going to be fired. (ECF No. 14-3, p. 19). The Court will view the evidence in the light most favorable to Plaintiff and assume for purposes of this opinion that Defendant Kinney fired him.

After Plaintiff's termination, he met with Defendant Eubanks, who mentioned knowing how much Plaintiff worked for North Crossett Utilities, "on the clock and off the clock." (ECF No. 14-1, p. 16). Plaintiff later met with Defendants Eubanks, Land, and Banks during the week of March 23, 2021, about the possibility of Plaintiff resuming his employment. During that meeting, Plaintiff did not tell Defendants Eubanks, Land, and Banks that he worked overtime hours he had not been paid for. Ultimately, it seems that Defendants Eubanks, Land, and Banks decided against letting Plaintiff resume work at North Crossett Utilities.

On April 22, 2021, Plaintiff filed this lawsuit, alleging that Defendants willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et seq. He alleges that Defendants failed to pay him overtime wages for all hours worked beyond forty hours in a workweek, specifically regarding his estimated average of twenty unreported overtime hours per week.

On March 10, 2022, Defendants filed the instant summary judgment motion. (ECF No.

14).  Plaintiff opposes the motion.

## II.  STANDARD

The standard for summary judgment is well established.  A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense."  Fed. R. Civ. P. 56(a).  The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Id.* at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

## III.  DISCUSSION

Defendants argue that they are entitled to summary judgment on Plaintiff's FLSA and

AMWA claims for two reasons. First, they argue that they are not "employers" under those statutes. Second, they argue that Plaintiff failed to prove he is entitled to unpaid overtime compensation under the FLSA and AMWA. Defendants alternatively argue that even if the Court rejects the previous arguments, partial summary judgment should be granted on the issues of whether the alleged violations were willful and whether liquidated damages should be available. The Court will begin with the first argument and, if necessary, will then address the others.[2]

### A. Whether Defendants can be Found Liable

Defendants first argue that they are entitled to summary judgment because North Crossett Utilities was Plaintiff's employer, not them. Defendants argue that Plaintiff's claims fail as a matter of law because they are not "employers," and they are therefore not subject to liability under the FLSA. They also argue, based on their respective positions with North Crossett Utilities, that Arkansas law immunizes them from liability for damages.

The Court will first determine whether Defendants are "employers" under the FLSA. If so, the Court will address the second argument regarding statutory immunity.

### 1. Whether Defendants are "Employers"

The existence of an employer-employee relationship is a prerequisite for an FLSA claim. *See* 29 U.S.C. § 216(b). Plaintiff bears the burden of proving that an employer-employee relationship exists. *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). There is no dispute that Plaintiff was an employee, so the Court focuses on whether Defendants were his

---

[2] "The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985-86 (W.D. Ark. 2016). Indeed, the Arkansas Department of Labor is authorized to "rely on the interpretations of the U.S. Department of Labor and federal precedent established under the [FLSA] in interpreting and applying the provisions of the [Minimum Wage] Act and [implementing rules], except to the extent a different interpretation is clearly required." Ark. Admin. Code 010.14.1-112. The Court will focus on the FLSA and relevant caselaw but unless otherwise noted, the analysis applies equally to Plaintiff's AMWA claims. *See Browne v. P.A.M. Transp., Inc.*, 434 F. Supp. 3d 712, 720 n.7 (W.D. Ark. 2020).

employers.  Whether a person or entity is an employer under the FLSA is typically a question of law for the Court to decide.  *See Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1113 (S.D. Iowa 2011) *aff'd*, 469 Fed. App'x. 498 (8th Cir. 2012) (per curiam).

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  A "person" can be an "individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  More than one entity or individual may qualify as an employee's employer under the FLSA.  *See Falk v. Brennan*, 414 U.S. 190, 195 (1973).

The FLSA defines the employment relationship "expansively" and with "striking breadth." *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).  Consistent with the FLSA's intent, courts "liberally construe [the FLSA] to apply to the furthest reaches consistent with congressional direction in fulfillment of its humanitarian and remedial purposes."  *Perez v. Contingent Care, LLC*, 820 F.3d 288, 292 (8th Cir. 2016) (internal quotation marks omitted). Accordingly, the FLSA's broad and comprehensive definitions encompass working relationships that may not fit prior common-law definitions of employment.  *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) ("[The FLSA] contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.").

To determine Defendants' employer status, the Court looks to the "economic realities" of the circumstances rather than technical common-law concepts of agency.  *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961).  In doing so, the Court considers whether Defendants: "(1) had hiring and firing power, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained the plaintiff's employment records." *Grove v. Meltech, Inc.*, No. 8:20-cv-193, 2021 WL 1516412, at *2 (D. Neb.

Apr. 16, 2021). "These factors are not exhaustive and no one factor is dispositive." *Childress v. Ozark Delivery of Mo. L.L.C.*, 95 F. Supp. 3d 1130, 1139 (W.D. Mo. 2015). "[T]he overarching concern is whether the alleged employer possessed direct or indirect power to control significant aspects of the plaintiff's employment." *Id.*

Defendants assert that North Crossett Utilities was Plaintiff's employer and, pursuant to Arkansas law, had the power to sue and be sued. Defendants contend that Defendants Eubanks, Banks, and Land did not own North Crossett Utilities, but were appointed board members for the improvement district. They also contend that Defendant Kinney was merely an employee of North Crossett Utilities. They argue that Defendants Eubanks, Banks, and Land did not set Plaintiff's pay, establish job duties, hire or fire Plaintiff, or provide day-to-day oversight to operations at North Crossett Utilities. They concede that Defendant Kinney had control over Plaintiff's day-to-day actions and had the power to fire him. However, they argue the economic reality of Defendant Kinney's position does not support a finding that he was an employer. They conclude that Plaintiff should have sued North Crossett Utilities and that they are entitled to summary judgment because he sued them instead.

Plaintiff responds that Defendants Eubanks, Banks, and Land had control over his employment conditions, including hiring and firing ability. Plaintiff contends that Defendants Eubanks, Banks, and Land came to the office once a week to check on things and that Eubanks and Land signed his paychecks. Thus, Plaintiff argues that Defendants Eubanks, Banks, and Land are employers. Plaintiff argues that Defendant Kinney is an employer who meets virtually all the applicable factors because he was a supervisor who controlled Plaintiff's work schedule, conditions of employment, rate of pay, and ultimately fired Plaintiff.

Defendant Kinney is an employer under the FLSA. There is record evidence showing that he set Plaintiff's pay (ECF No. 14-3, p. 19), that he signed Plaintiff's paychecks (ECF No. 19-1,

p. 40), that Plaintiff reported directly to him (ECF No. 19-1, p. 8), that he came out to observe Plaintiff working in the field "at least five [or] six times a . . . week" (ECF No. 19-1, p. 9), that he occasionally told Plaintiff what job duties to perform (ECF No. 14-3, p. 19), that he would check and verify Plaintiff's timecards (ECF No. 14-2, p. 19), and that he not only had firing ability but fired Plaintiff. (ECF No. 19-1, p. 4). In almost every respect, Defendant Kinney had power to control significant aspects of Plaintiff's employment. Considering the totality of the circumstances, Defendant Kinney qualifies as an "employer" subject to liability under the FLSA.

Defendants Eubanks, Banks, and Land are also employers under the FLSA. They were board members of an improvement district, so Arkansas law gave them hiring power. *See* Ark. Code Ann. § 14-92-220 (giving improvement district board members, *inter alia*, the powers prescribed in Ark. Code Ann. § 14-92-220, which includes the authority to hire employees and pay their salaries). The North Crossett Utilities handbook gave them the power to fire Plaintiff for any reason, at any time. (ECF No. 14-2, p. 34). The handbook also gave them the power to authorize employment contracts and other agreements on behalf of North Crossett Utilities. (ECF No. 14-2, p. 3). They apparently had the ability to either override Defendant Kinney's firing of Plaintiff or to otherwise rehire him, as they met with Plaintiff to consider the possibility of letting him resume work at North Crossett Utilities after he was fired. (ECF No. 19-1, pp. 20-22). Defendant Kinney, the regional manager for North Crossett Utilities, reported directly to Defendants Eubanks, Banks, and Land. (ECF No. 19-1, p. 40). As board members, Defendants Eubanks, Banks, and Land authorized employees' starting salaries and any subsequent raises. (ECF No. 19-3). They did not have offices at the North Crossett Utilities facility, but all three would go to the facility at least once a week to check on things (ECF No. 19-1, pp. 4-7), and at least Defendants Eubanks and Land signed Plaintiff's paychecks. (ECF No. 19-1, p. 40). The record shows that Defendants Eubanks, Banks, and Land had both direct and indirect power to

8

control significant aspects of Plaintiff's employment.  They qualify as "employers" subject to liability under the FLSA.

In sum, Defendants qualify as employers for purposes of the FLSA, so they are not entitled to summary judgment based on that issue.

### 2. Immunity

Arkansas law provides that no member of a suburban improvement district's board of commissioners "shall be liable for any damages unless it shall be made to appear that he had acted with a corrupt and malicious intent."  Ark. Code Ann. § 14-92-207(c).  Defendants seize on this language to argue that, as the board of commissioners for North Crossett Utilities, they are immune from suit because Plaintiff has offered no evidence that they acted with a corrupt and malicious intent.

Plaintiff argues in response that this statutory immunity is inapplicable to his FLSA claims because the Supremacy Clause prevents state legislatures from immunizing individuals alleged to have violated federal law.  Plaintiff does not respond to the argument with respect to his AMWA claims.

Although Defendants make this argument for all of them, only Defendants Eubanks, Banks, and Land were board members for North Crossett Utilities.  It is undisputed that Defendant Kinney was not a board member and was only a district manager, so he does not enjoy the immunity provided to board members under the statute Defendants cite.  *See* Ark. Code Ann. § 14-92-207(c) (immunizing the board of commissioners of a suburban improvement district).

For the remaining Defendants, their argument is unpersuasive, at least for Plaintiff's FLSA claims.  The immunity statute Defendants cite, although effective against state-law claims, has no force when applied to federal claims.  The Supremacy Clause trumps section 14-92-207(c) to the extent that it would immunize Defendants from liability for alleged violations of federal wage-

9

and-hour law. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613 (1979) ("Even though the [Supremacy] Clause is not a source of any federal rights, it does 'secure' federal rights by according them priority whenever they come in conflict with state law. In that sense all federal rights, whether created by treaty, by statute, or by regulation, are 'secured' by the Supremacy Clause.") (cleaned up); *cf. Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048-RTD, 2011 WL 1978414, at *6 (W.D. Ark. May 20, 2011) (citing the Supremacy Clause when rejecting an argument that the Arkansas LLC Act shields members of an LLC from individual liability for the LLC's alleged FLSA violations). Were the rule otherwise, a state legislature would be able to frustrate the objectives of a federal statute.

However, Plaintiff offers no response to Defendants' argument for immunity under section 14-92-207(c) on the state-law AMWA claims against Defendants Eubanks, Banks, and Land.[3] Thus, the Court assumes that Plaintiff has abandoned and waived his AMWA claims against Defendants Eubanks, Banks, and Land. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *Chipman v. Cook*, No. 3:15-cv-143-KGB, 2017 WL 1160585, at *7 (E.D. Ark. Mar. 28, 2017) (finding that failure to address a summary judgment argument on a particular claim is a waiver of that claim). Defendants Eubanks, Banks, and Land are entitled to summary judgment on Plaintiff's waived and abandoned AMWA claims.

In one sentence, Defendants also note that state officers in Arkansas enjoy sovereign immunity "from suit except to the extent covered by insurance or for malicious acts." (ECF No. 15, p. 6). They do not expand on this statement or otherwise argue that this rule applies to them.

---

[3] The only response Plaintiff provides on immunity concerns the FLSA claims and Defendants' general assertion of sovereign immunity. (ECF No. 19, p. 11). Plaintiff does not discuss the AMWA claims and section 14-92-207(c), which explicitly immunizes board members of improvement districts from liability for damages.

However, assuming *arguendo* that they argue for the application of sovereign immunity here, they cite no authority in support of this, other than a distinguishable Eighth Circuit case affirming the grant of sovereign immunity to a police officer on a claim brought under the Arkansas Civil Rights Act. *See Thurairajah v. City of Fort Smith, Ark.*, 3 F.4th 1017, 1023-25 (8th Cir. 2021). Defendants presumably base their argument on the statute discussed in *Thurairajah*, Ark. Code Ann. § 19-10-305, which provides sovereign immunity to "[o]fficers and employees of the State of Arkansas" for tort liability, except to the extent that they are covered by liability insurance or for malicious acts or omissions committed in the course and scope of their employment. Ark. Code Ann. § 19-10-305(a).

This argument is unpersuasive. Defendants cite no cases, and the Court is unaware of any, applying this statute to bar liability for FLSA claims. Moreover, they cite no authority and point to no evidence establishing that they are indeed state officers by virtue of being board members for an improvement district—or, in Defendant Kinney's case, an employee of an improvement district. Even if the statute applied to Defendants here, they would still be liable for damages to the extent that they are covered by liability insurance, and they point to no evidence showing that they have no liability insurance coverage or, if they do, what the limits of their policies are. Summary judgment based on this argument is denied.

### B. Overtime Proof

Defendants also contend that they are entitled to summary judgment on the merits of Plaintiff's FLSA claims for two reasons. First, they argue that Plaintiff cannot prove he worked overtime hours that he was not paid for. Second, they argue that Plaintiff cannot prove that Defendants knew or should have known that he was working overtime.

The general rule under the FLSA is that an employer must pay non-exempt employees one-and-a-half times their regular rate when they work more than forty hours in a week. 29 U.S.C. §

207(a)(1).  There is no dispute that Plaintiff was a non-exempt employee, so to prevail on his FLSA overtime claims, he must "present evidence that [he] worked above [his] scheduled hours without compensation and that [Defendants] knew or should have known that [he was] working overtime." *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 781 (8th Cir. 2009).

The Court will begin by addressing Defendants' arguments regarding proof of overtime hours.  If necessary, the Court will then address Defendants' knowledge.

"An employee who sues for unpaid overtime has the burden of proving that he performed work for which he was not properly compensated."  *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (internal quotation marks omitted).  "If an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process."  *Grounds v. City of Little Rock*, No. 4:21-cv-0115-BRW, 2022 WL 468011, at *2 (E.D. Ark. Feb. 15, 2022).  "However, courts have found that an employer's formal policy for reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting of overtime in practice."  *Id.*

Defendants established a reasonable time-keeping system that required employees like Plaintiff to punch a timecard in and out each day when they began and ended their workday, thereby recording all hours they worked.  Plaintiff was able to retroactively correct his logged times and report overtime worked before and after he clocked in and out.  There is also some evidence, though, that North Crossett Utilities management discouraged employees from reporting "a lot" of overtime.  (ECF No. 19-1, p. 27).  Thus, Plaintiff's failure to follow Defendants' established process of recording all his work hours is not automatically fatal to his claims.  Plaintiff must now establish the overtime work he claims to have performed that went unpaid.  *Grounds*, 2022 WL 468011, at *2

Employers must keep records of wages and hours for employees subject to the FLSA's overtime requirements. 29 U.S.C. § 211(c). Ideally, an employee's allegedly unpaid overtime hours will be reflected in the employer's records. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) (noting if "the employer has kept proper and accurate records[,] the employee may easily discharge his burden by securing the production of those records"). However, if an employee contends, like Plaintiff does here, that the employer's recordkeeping is incomplete or inadequate, he is "not denied recovery under the FLSA simply because [he] cannot prove the precise extent of [his] uncompensated work." *Holaway*, 771 F.3d at 1059. Instead, the "most accurate basis possible" may be used to calculate compensation owed. *Id.* Under this relaxed evidentiary standard, Plaintiff must establish the unpaid overtime work he claims by showing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013). Then the burden "shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Id.*

Defendants contend that Plaintiff has not provided any evidence to make a just and reasonable inference of the amount of unpaid overtime hours he claims to have worked. Defendants argue that Plaintiff merely guessed that he worked roughly four or five hours of overtime a day, for a total of twenty per week. Defendants argue that Plaintiff has no evidence, records, or documentation supporting his estimation and has pointed to no specific hours, days, or weeks in which he worked unreported overtime. Defendants conclude that Plaintiff has not provided a meaningful explanation of his estimated overtime, and thus has failed to carry his initial burden, so they are entitled to summary judgment.

Plaintiff responds that Defendants bear the burden of keeping complete and accurate records of their employees' work hours and cannot shift the burden to him. Plaintiff contends that

he did not report all his overtime hours because North Crossett Utilities staff discouraged excessive overtime. Plaintiff concludes that there is sufficient evidence to show that he not only worked unreported overtime hours for which he was not paid, but that he was also not paid for all the overtime hours he did report.

Defendants reply that Plaintiff has not shown any evidence of unreported overtime hours to support his estimates. Defendants also contend that until now, this case was litigated, and discovery was conducted, over Plaintiff's alleged unreported overtime hours and Plaintiff cannot, at the summary-judgment stage, change his theory of the case to include overtime that he reported and was allegedly not paid for.

The Court agrees that Plaintiff has not put forth proof of unreported overtime hours, even under the relaxed evidentiary standard applicable when an employer has kept incomplete records. Plaintiff estimates that he worked an average of twenty hours of overtime per week that he did not report. However, he provides no evidence of these hours and does not specifically account for any unreported overtime hours. He claims to have written down the unreported hours but later explained during his deposition that he can no longer find those written records. Thus, there is no meaningful explanation at how he arrived at his estimate. At most, he provides a general and vague affidavit wherein he recalls working off the clock mowing about two times per week for unspecified lengths of time, that he sometimes responded to emergency calls off the clock for varying periods of time, and a few times per month he would join his crew members in the field for unspecified periods of time when he was not clocked in because they called him and needed his help. (ECF No. 19-2).

These generalized descriptions of duties are not enough to meet Plaintiff's burden. Vague testimony that "fail[s] to reference specific days and hours worked" is insufficient proof of overtime hours, even under the relaxed standard being applied here. *Holaway*, 771 F.3d at 1059-

60; *see also Rapp v. Network of Cmty. Options, Inc.*, 3 F.4th 1084, 1088 (8th Cir. 2021) (affirming the grant of summary judgment to defendants in an FLSA case when the plaintiff failed to "specifically account for the hours worked"); *Grounds*, 2022 WL 468011 at *3 (granting summary judgment to defendants when an FLSA plaintiff offered only "general and vague" estimates of unreported overtime with no "specific dates, supporting documents, or other corroborating information"). Plaintiff has not offered proof of any specific hours, days, or weeks in which he worked unreported overtime. When viewing the evidence in the light most favorable to Plaintiff, there are no details from which a jury could determine that he worked unreported overtime hours that he was not paid for. *See Holaway*, 771 F.3d at 1060.

Plaintiff has not provided "sufficient evidence to show the amount and extent of [the unreported overtime] work as a matter of just and reasonable inference," so Defendants are entitled to summary judgment on the claims for unreported overtime hours. *Id.* In light of this finding, the Court need not consider whether there is evidence of Defendants' knowledge of the unreported overtime hours.

That leaves Plaintiff's contention that Defendants also failed to pay him overtime hours that he worked and reported. Defendants argue that Plaintiff is raising this claim for the first time in a summary judgment response brief, which amounts to an improper attempt to amend his complaint at the summary-judgment stage.

The Court agrees. Nothing in Plaintiff's complaint alleges that he worked—and reported— overtime hours for which Defendants failed to pay him. The complaint's only specific allegations related to unpaid overtime involve the twenty overtime hours Plaintiff claims to have worked per week and did not report. (ECF No. 2, p. 6). In his deposition on October 12, 2021, Plaintiff testified that he "can't recall" any instance in which he turned in overtime hours for which he was not paid. (ECF No. 19-1, p. 34). Plaintiff also testified in the same deposition that he was paid

15

for every hour of work he turned in. (ECF No. 14-1, p. 35). Moreover, Plaintiff's recently filed pretrial disclosure sheet, in part, summarizes this case's relevant facts as Plaintiff having "regularly worked hours that went unrecorded and uncompensated." (ECF No. 25, p. 3).

Nothing before the Court indicates that Plaintiff asserted a claim for unpaid overtime for hours he reported. That claim is not made in Plaintiff's complaint and appears to be refuted by Plaintiff's deposition testimony and pretrial disclosure sheet. Plaintiff has not moved to amend his complaint to include that claim and the amendment deadline passed on December 14, 2021. The Court need not issue a summary judgment opinion on a claim for reported, unpaid overtime because Plaintiff has not pleaded such a claim.

In sum, Defendants are entitled to summary judgment on Plaintiff's claims because there is not sufficient proof of Plaintiff's alleged unreported overtime. The Court need not address Defendants' alternative arguments for summary judgment. Defendants' motion will be granted, and this case will be dismissed.

## IV.  CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (ECF No. 14) is hereby **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 3rd day of May, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge